| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>----------------------------------------------------------- X<br>RICARDO CASTANG,<br><br>                Plaintiff,<br><br>        - against-<br><br>WILLIAM GEIMANO; JOHN DOE,<br>individually and in their official capacities;<br>and CITY OF NEW YORK,<br><br>                Defendants.<br>----------------------------------------------------------- X | C/M<br><br><br><br><br><br>**MEMORANDUM DECISION<br>AND ORDER**<br><br>19-cv-7178 (BMC) (LB) |

**COGAN**, District Judge.

Plaintiff *pro se*, in his amended complaint, has asserted claims under 42 U.S.C. § 1983 and state law against the City of New York and a John Doe police officer, and under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), against William Geimano, a Special Agent of U.S. Customs and Immigration Enforcement.  He alleges that the City is liable for John Doe's use of excessive force and that SA Geimano failed to intervene after his arrest.  Through their separate counsel, the City and SA Geimano have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the ground that plaintiff's claims are time-barred, and, in any event, they fail to state a claim.  Their arguments are correct and the motions are granted, except that I decline to exercise supplemental jurisdiction over plaintiff's state law claims.

## BACKGROUND

On September 21, 2016, plaintiff was arrested by a Joint Task Force comprised of detectives from the Manhattan Special Narcotics Unit and Homeland Security.  He was placed in

a holding cell at the 77th Police Precinct, located in Brooklyn, New York.[1] The amended complaint alleges that when John Doe began placing handcuffs on him, he punched plaintiff in the head several times and hyperextended plaintiff's arm and shoulder, from which plaintiff sustained lasting and serious injuries, including continuing pain throughout his body, nosebleeds, and headaches. SA Geimano observed the assault but took no action to stop it.[2]

Plaintiff later pled guilty in state court of the crimes for which he was originally detained.[3] Specifically, he was convicted for attempted criminal possession of a controlled substance and of a scheme to defraud, thereby resulting in a sentence ranging from 8 ½ - 10 years' in state prison.[4]

Furthermore, although he did not raise a false arrest or malicious prosecution claim under § 1983 in the amended complaint, while opposing the instant motion, plaintiff questioned the evidence underlying his arrest and prosecution.

---

[1] The amended complaint alleges that it was the 71st Precinct, but the City has learned that it was the 77th Precinct. It also alleges that Special Agent Geimano was a New York City detective, but in fact he was employed by the Department of Homeland Security.

[2] The amended complaint also describes events involving plaintiff's arrest and medical treatment. If he meant to assert claims against anyone other than the defendants here for those incidents, he has not named them, not even as John Doe defendants. In any event, such claims would be time-barred for the same reason his claims are barred against the named defendants, as discussed below.

[3] See https://www.dea.gov/press-releases/2017/10/05/ricardo-castang-sentenced-10-years-prison-narcotics-trafficking-and-fake (last visited Sept. 14, 2020). I will take judicial notice of the government press release announcing plaintiff's arrest and subsequent guilty plea. See McLoughlin v. People's United Bank, Inc., 586 F. Supp. 2d 70, 73 (D. Conn. 2008). Plaintiff also acknowledges that he pled guilty in exchange for a more lenient sentence.

[4] See http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130 (last visited Sept. 14, 2020). A court may also take judicial notice of a plaintiff's underlying conviction and sentence when it is available publicly on the Department of Correction's website. See Sanchez v. RN Debbie, No. 18-cv-1505, 2018 WL 5314916, at *2 n.4 (D. Conn. Oct. 26, 2018); Ruffins v. Dep't of Corr. Servs., 907 F. Supp. 2d 290, 293 n.4 (E.D.N.Y. 2012).

## DISCUSSION

It is axiomatic that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, and the Court is required to read a plaintiff's *pro se* complaint liberally and interpret it raising the strongest arguments it suggests. See Erickson v. Pardus, 551 U.S. 89 (2007). Nevertheless, where there are legal defenses that prohibit a plaintiff from proceeding with his claims, the special indulgence afforded to *pro se* plaintiffs does not save the plaintiff's case. See Abbas v. Dixon, 480 F.3d 636, 640-41 (2d Cir. 2007).

Plaintiff's excessive force claim against the John Doe police officer and the City of New York are brought under 42 U.S.C. § 1983. The statute of limitations for this claim, borrowed from the New York statute for personal injury claims, is three years. See Horn v. Politopoulos, 628 F. App'x 33 (2d Cir. 2015). A § 1983 claim accrues under federal law when the plaintiff knows or has reason to know of the injury on which the claim is based. Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002).

This means that the accrual date in an excessive force case usually is the date on which the excessive force is used, and that certainly is the case here. Plaintiff alleges immediate and serious injuries from the alleged excessive force. The claim therefore accrued on September 21, 2016. Plaintiff commenced this action on December 19, 2019, more than three years later.[5] It is therefore time-barred.[6]

---

[5] The City was not named in plaintiff's original complaint; it was added in his amended complaint. For purposes of the City's motion, I am assuming that plaintiff's amended complaint relates back to the date of his original complaint. That assumption is overly generous to plaintiff, see Cotto v. City of New York, 803 F. App'x 500 (2d Cir. 2020), but it does not affect the outcome of the City's motion.

[6] Although plaintiff has not yet identified John Doe, the claim against him is dismissed as untimely for the same reason. See Clement v. United Homes, LLC, 914 F. Supp. 2d 362, 375 (E.D.N.Y. 2012).

However, a statute of limitations can be equitably tolled if a plaintiff demonstrates extraordinary circumstances that prevented him from timely filing his claim. To invoke the doctrine of equitable tolling, a plaintiff must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. See Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003). This standard is very high. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) (stating "a garden variety claim of excusable neglect" is not enough to show equitable tolling). And the burden is on the plaintiff to demonstrate the basis for equitable tolling. See Holland v. Florida, 560 U.S. 631, 655 (2010).

I cannot find that plaintiff has met this difficult standard. He has offered five reasons why the statute of limitations should be equitably tolled: (1) prior to commencing this action, he "contacted the court" on two occasions to request an extension to file this case; (2) there were prison lockdowns due to a gang war during the summer prior to September 21, 2019 that prevented him from filing; (3) he lacked legal knowledge due to his *pro se* status; (4) he was unable to obtain a lawyer; and (5) he lacked consistent access to the law library.

None of these reasons is sufficient to invoke equitable tolling. Plaintiff has submitted a copy of the letter he sent to the Court prior to September 21, 2019. There is only one, not two (not that this is material). It is dated August 27, 2019. It did not request any extension to commence this action. It requested copies of the § 1983 template (presumably form AO *Pro se* 14) and other forms; it also sought recommendations from the Clerk's office for a "reputable law firm with a stellar track record with successfully winning cases of assault and battery by the police." Rather than showing diligence on plaintiff's part to meet the statute of limitations, the letter shows that he was aware that he needed to commence his lawsuit, but failed to do so. It also reveals that plaintiff intentionally delayed filing his action in hopes of securing the legal

4

services of an attorney with experience winning cases against the City.  In any event, even if the letter had requested an extension, a court cannot grant a party relief before an action is commenced.  See Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."); Antonio v. United States, No. 14-cv-2072, 2017 WL 3769307, at *1 (S.D.N.Y. Aug. 30, 2017) (stating a court lacks jurisdiction to grant a plaintiff relief when there was no underlying, operative complaint).

      As to the "gang war" that caused lockdowns, plaintiff's statement is insufficient to support equitable tolling.  He asserts that "all summer long, there was a 'gang war' going on in the prison, up until the first 2 weeks of Sept. to the beginning of Oct.  The jail was on 'lock-down' for weeks, several times over the summer of 2019."  First, lockdowns are part of prison life and are therefore not extraordinary.  See United States v. Rudge, No.16-cr-311, 2019 WL 4867828, at *2 (S.D.N.Y. Sept. 18, 2019) ("the many challenges associated with life in prison do not, on their own, establish grounds for equitable tolling."); Amante v. Walker, 268 F. Supp. 2d 154, 158 (E.D.N.Y. 2003) ("transfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents do not by themselves qualify as extraordinary circumstances.").

      Second, there is no proof offered by plaintiff that his prison was on continuous lockdown from the summer of 2019 through September 21, 2019 – indeed, his allegations of sporadic lockdowns are to the contrary – and even if it was, plaintiff didn't have to wait 2 ¾ years before attempting to file a lawsuit for an alleged beating he suffered in 2016.  At any time during the statutory period, plaintiff could have filed a simple statement on a plain piece of paper labeled "Complaint" that said, for example: "On September 21, 2016, I was arrested and then punched multiple times for no reason by a John Doe New York City police officer at the 77th precinct

5

while Officer Geimano stood by and watched for which I suffered many injuries.  I want damages for the violation of my constitutional rights in the amount of $X."  He could have done that in his letter to the Court instead of asking for forms or a referral for a civil rights attorney.  Filing a document that said no more than that might have been dismissed with leave to amend, or it may have been allowed to proceed, but in either event, it would have been sufficient to prevent expiration of the statute of limitations.  Cf. Boykin v. United States, No. 18-cv-736, No. 10-cr-391, 2018 WL 4855271, at *3 (S.D.N.Y. Sept. 21, 2018) ("the lockdown ended a full week before Boykin's petition had to be mailed, and so did not prevent him from mailing the Petition.").

Furthermore, neither lack of familiarity with the law nor a prisoner's inability to hire a lawyer is sufficient to warrant equitable tolling.  See Bowens v. Cook, No. 20-cv-355, 2020 WL 4043048, at *4 (D. Conn. July 17, 2020) ("Courts within the Second Circuit consistently have held that the lack of legal knowledge or legal assistance is not an extraordinary circumstance warranting equitable tolling.") (collecting cases and quoting Francis v. Comm'r of Correction, No. 18-cv-847, 2019 WL 8223557, at *5 (D. Conn. March 15, 2019) (citation and internal quotation marks omitted)).  Plaintiff's unfamiliarity with the law was no different than the vast majority of other prisoners.  His self-serving statement that he had difficulty understanding the legal system does not require a different result.  See, e.g., Watson v. United States, 865 F.3d 123, 133 (2d Cir. 2017) (stating equitable tolling cannot be premised on the plaintiff's lack of education, *pro se* status, or ignorance of the right to bring a claim); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999) (holding that petitioner's unfamiliarity with the legal system or lack of representation does not warrant equitable tolling).

6

Lastly, plaintiff's intermittent access to the law library due to periodic lockdowns does not warrant the application of equitable tolling. Plaintiff states that he had to submit a formal request 5 days in advance to visit the law library and contends that "anything can happen between the time you put in the request and the time you get called." This argument fails. See McDonald v. Castro, 66 F. App'x 98, 100 (9th Cir. 2003) (rejecting claim that limitation period should be equitably tolled because of prison lockdowns and lack of access to law library); Matthews v. Artus, No. 07-cv-4157, 2008 WL 111191, at *2 (E.D.N.Y. Jan. 9, 2008) ("[T]he facility's lockdown and petitioner's lack of access to the law library during the investigation and renovation period does not justify equitable tolling."). In any event, plaintiff's situation was not particularly complex and he fails to advance any real argument why visiting the law library was a necessary prerequisite before he could file his complaint. In fact, plaintiff acknowledges that he only became aware of a § 1983 claim or notice of claim after speaking with other inmates – not through research conducted at the law library.

At bottom, plaintiff's assertions show that any substantial delay in commencing this lawsuit had little to do with "lockdowns" or access to the law library. Rather, plaintiff believed that he "could not adequately nor effectively represent myself" against defendants, but "relented in filing/doing the § 1983 complaint on my own" because he could not retain an attorney: "Plaintiff began to work on filing the complaint after he had exhausted all other avenues, and himself, writing to legal representatives; over and over, back and forth, to take his case to no avail." Specifically, he squandered 5-7 months corresponding back and forth with one attorney, as she ultimately declined to take his case. The only thing that stood in plaintiff's way from

7

timely filing this action was his desire to obtain legal representation – not any extraordinary circumstance.[7]

For the same reason, plaintiff's claim against SA Geimano is also untimely. In the absence of a claim under the Federal Tort Claims Act, 28 U.S.C. § 2675 (which plaintiff did not file and is too late to file now), the only possible claim against a federal law enforcement officer for failure to intervene to prevent the use of excessive force is under Bivens. That claim is also subject to a three year statute of limitations borrowed from New York law. See Rudaj v. Treanor, 522 F. App'x 76, 77 (2d Cir. 2013). The claim accrues when the prisoner knows or has reason to know of it. Gonzalez v. Hasty, 802 F.3d 212, 220 (2d Cir. 2015). Thus, plaintiff is time-barred from proceeding against SA Geimano.

In addition, both the claim against the City and SA Geimano fail on the merits. The City can only be liable under 42 U.S.C. § 1983 if John Doe's alleged use of excessive force occurred "pursuant to a governmental policy, custom or usage." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978). The amended complaint contains no allegations to support such a claim. As to SA Geimano, the Supreme Court has never extended Bivens to a claim for failure to intervene, and has counseled against lower courts creating new claims for relief under Bivens in the absence of congressional legislation. See Ziglar v. Abbasi, 137 S. Ct. 1843 (2017); see also Martinez v. D'Agata, No. 16-cv-44, 2019 WL 6895436, at *7 (S.D.N.Y. Dec. 18, 2019) (declining to recognize a Bivens remedy for failure to intervene against federal defendants).

---

[7] It should be noted that when a prisoner obtains legal counsel to represent him in a § 1983 action, it is rarely the case that he pays a retainer or fee. Under 42 U.S.C. § 1988, if a plaintiff prevails in an action, the defendant must pay an additional amount as a reasonable attorneys' fee. And the fee may well exceed the amount of damages that the plaintiff recovers. This means that if any attorney thinks that a case has merit, even enough merit to warrant a settlement, that attorney is incentivized to take on the representation. Conversely, if a would-be plaintiff cannot find any attorney willing to take his case, it may be some indication that the case is problematic.

As to the new allegations contained in plaintiff's opposition questioning his underlying arrest and prosecution, to the extent plaintiff suggests a § 1983 false arrest or malicious prosecution claim, Heck v. Humphrey, 512 U.S. 477, 483-87 (1994), forecloses this possibility. Even if I were to grant plaintiff leave to amend the complaint, his guilty plea establishes probable cause and precludes a claim for false arrest and malicious prosecution under § 1983. See Magnotta v. Putnam Cty. Sheriff, No. 13-cv-2752, 2014 WL 705281, at *5 (S.D.N.Y. Feb. 24, 2014); Houston v. City of New York, No. 06-cv-2094, 2013 WL 1310554, at *4 (E.D.N.Y. March 28, 2013).

The last remaining issue is plaintiff's state law claim for assault or state constitutional violations against the City and John Doe.[8] The City has three arguments for dismissal. First, the City asserts that it should be dismissed because the complaint does not allege that plaintiff filed a notice of claim as required by N.Y. General Municipal Law §§ 50-e and 50-i. Whatever the pleading requirements are in state court, there is nothing in Federal Rule of Civil Procedure 8 that requires plaintiff to plead such notice. It a plaintiff is required to so plead in state court, it is clearly a state procedural requirement. I therefore reject the City's argument.

Second, the City asserts that, in fact, plaintiff, although asserting that he did in fact file a notice of claim, has failed to prove it. However, the City has failed to prove that he did not. Neither party has submitted evidence of whether a notice of claim was filed, nor have they briefed whether that substantive issue is properly before me on a Rule 12(b)(6) motion. I decline to resolve that factual dispute.

Finally, the City also argues that any state law claims are time-barred because plaintiff did not bring them against the City within one-year and ninety-days of the incident on September

---

[8] As to John Doe, see fn. 6 supra.

21, 2016, as required by N.Y. Gen. Mun. Law § 50-i(a).  However, neither side has addressed whether there is a state law doctrine analogous to the federal doctrine of equitable tolling, and if so, whether the state doctrine is any different than federal equitable tolling.  I see no reason why the state courts could not be, if they so chose, more lenient towards *pro se* plaintiffs in tolling statutes of limitations than the federal courts.

There is no reason for me to determine these issues.  Pursuant to 28 U.S.C. § 1367(c)(3), I have discretion to decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction."  Since plaintiff's federal claims have been dismissed, I decline to maintain jurisdiction over the remaining city law claims.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent [now "supplemental"] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."); Brzak v. United Nations, 597 F.3d 107, 114 (2d Cir. 2010).  Plaintiff's state law claims against the City and John Doe are therefore dismissed without prejudice to recommencement in state court.

## CONCLUSION

Defendants' motions to dismiss [37 and 49] are granted in part and denied in part.  Plaintiff's federal claims against defendants are dismissed with prejudice, and his state law claims against the City and John Doe are dismissed without prejudice.  The Clerk shall enter judgment accordingly.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal

from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. See <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
      September 14, 2020